# PUBLIC DEFENDER SERVICE
## FOR THE DISTRICT OF COLUMBIA

BOARD OF TRUSTEES

CYNTHIA D. ROBBINS
   CHAIRPERSON
JOHN PAYTON
   VICE CHAIRPERSON
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
LYDIA S. LIVELY
KARL A. RACINE
JEFFREY D. ROBINSON
DONALD R. VEREEN, JR.
JO-ANN WALLACE
ROBERT L. WILKINS

633 INDIANA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582

FAX (202) 824-2784

www.pdsdc.org

RONALD S. SULLIVAN JR.
DIRECTOR

AVIS E. BUCHANAN
DEPUTY DIRECTOR

June 23, 2005

VIA FAX # 202/698-9841
Gerald Bowser
CCA/Correctional Treatment Facility
1901 E Street, SE
Washington, DC 20003

**Re: Transfer of Andrew White DCDC# 177-989, Reg.# 27484-016**

Dear Mr. Bowser:

   Thank you for your attention to my previous request and for notifying me of my client's situation. I understand that I should limit my requests to the clients with the most compelling needs. I request that an exception to the freeze on CTF transfers be made for Andrew White, who is currently housed in the Central Detention Facility. Mr. White is awaiting a final hearing before the Parole Commission on August 11, 2005 at the Central Treatment Facility. He is charged with only technical violations of his parole conditions and has no new criminal conduct.

   Mr. White's medical condition requires that he be able to complete physical exercise on a daily basis. Mr. White suffers from myositis, a disease that causes the immune system to chronically inflame the body's muscle tissue. Persistent inflammation progressively weakens the muscles and may cause severe debilitation. Mr. White has been receiving drug therapy for his condition, but his condition also requires that he be able to have daily exercise to reduce inflammation and maintain flexibility and movement. I have attached some information about his condition. The second page discusses treatment.

   The significant hours of lock down at the DC Jail are having a detrimental effect on his access to physical activity. Mr. White will be transferred to CTF for his final hearing. He requests that the transfer be made immediately for his mental health and physical well-being.

   Thank you for your attention in this matter. Do not hesitate to contact me if you have questions regarding this communication. I can be reached at (202) 628-1200 or (510) 813-4111.

Sincerely,

*[signature]*

Sarah Rackley, Law Clerk
Cc: Andrew White

AN EQUAL OPPORTUNITY EMPLOYER

as the disease begins and adjust so well that even they are not aware of the gradual progression of their disease for a long time. The disease often appears to come (disease *flare*) and go (disease *remission*) for no apparent reason, and sometimes its form changes over time. Myositis flares usually are recognized by increasing symptoms of muscle weakness, fatigue, skin changes or arthritis.

### Diagnosis

Because myositis closely resembles many other diseases and differs from person to person, it can be difficult to diagnose. Your doctor may have to perform many tests and see you several times before diagnosing myositis. During the process of reaching a diagnosis, your doctor will ask a series of questions about the problems you're experiencing and will perform a physical examination. Blood tests may be done, including some that test for autoantibodies and muscle enzymes. One of the most useful is a blood test for a muscle enzyme called *creatine kinase*, or CK. In most people with active myositis, the CK level in the blood is abnormally high. The CK level tends to go up with increasing myositis disease activity and tends to go down as the myositis improves.

Another procedure that is useful in diagnosing myositis is an *electromyogram* (EMG). An EMG measures the electrical pattern of the muscles, just as an electrocardiogram (EKG) measures the electrical pattern of the heart. Sometimes, *magnetic resonance imaging* (MRI) of the weak muscles is done. An MRI produces a picture (image) of the muscle that can show the inflamed areas.

Your doctor also may request that a *muscle biopsy* be done. This procedure involves the removal of a small piece of muscle for examination under a microscope. The muscle biopsy shows your doctor whether and how the muscle fibers are damaged. It also helps determine what type of myositis is present.



### Treatment

Many forms of treatment for myositis exist. Most methods include medication, rest, exercise and physical therapy. Treatment will vary from person to person and will change over time for each individual. The specific therapy recommended by your doctor will depend upon the severity and type of problems, the presence of other medical conditions, and adverse reactions to previous therapy.

For more information on *Myositis*, order your free copy today.

● **Top of the page**    ● **Product information page**



**A Mind Body Spirit Email Newsletter...**

Sign-up Today! It's Free!    Enter your email: [          ]    SUBSCRIBE

Social Security Administration
**Supplemental Security Income**
Notice of Award

Date: August 3, 2005
Claim Number: 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 DI

531  0727,M06,008,029411    000029411 03 MB    0.718

ANDREW NATHANIEL WHITE
281 NEWCOMB ST SE
APT 2
WASHINGTON DC 20032-1720

\* Application Filed \*
January 31, 2005

\* Type of Payment \*
Individual--Disabled

This is to notify you that you are eligible to receive Supplemental Security Income payments under the provisions of Title XVI of the Social Security Act. The rest of this letter will tell you more about our decision.

We explain how we figured the monthly payment amounts shown below on the last page of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment. It also shows how we decided how much of your income affects your payment amount.

### How Much We'll Pay

| *Beginning* | *Through* | *Monthly Amount Payable* |
|---|---|---|
| January 31, 2005 | January 31, 2005 | $0.00 |
| February 1, 2005 | April 30, 2005 | $579.00 |
| May 1, 2005 | Continuing | $0.00 |

### Information About Your Payments

We will be in touch with you about your back payments.

### Your SSI Is Based On These Facts

- You met all the rules to be eligible for SSI beginning January 31, 2005. However, we cannot pay SSI until the month after you first meet the rules. In addition, we cannot pay you any SSI for months after that because of the reason or reasons given below.

See Next Page

SSA-L8025

August 9, 2005


TO D.C. PAROLE COMMISSION:

This letter is written on behalf of Andrew White. Andrew and I have been married for twenty years. Nineteen of the years he has struggled with drug addiction. I used to think that he could stop if he wanted to but as I begin to do some study and research on drug addiction I found out that addictions are and should be classified as an illness just as much as cancer or diabetes. The only difference in this disease is that there are no known medications to stop its progression. Being punished because of an illness should not be the case.

I have reviewed the report that Ms. Asher wrote and can honestly say that I am shocked that it contains so much erroneous information. I personally took off from my place of employment and escorted Andrew to the places he was instructed to report, therefore I was there. I believe that Ms. Asher has let her personal feelings toward my husband interfere with her professionalism and tact.

Attached you will find a letter that Mr. Mullen-el wrote after I met with him and asked him to give a statement as to what actually happened.

Andrew has done 10 ½ years on a 30 year sentence and has been on parole for over 20 years. He has not been convicted of any other offenses during this time. He does not pose a threat to society. If he was going to commit a crime he would have done it by now. Most felons commit crimes and are reincarcerated within a year of their release date.

I could say to you in this letter that if Andrew is released back into society that he won't use drugs again, I wish it was that simple. If I could speak a word to rid him of this horror it would have been spoken nineteen years ago. I can only tell you how I feel within myself and that is, that he needs help, both mentally, physically and most of all spiritually. I do not believe as I have stated on numerous times before that incarceration is not the answer. I do believe with a strong support system, a change in environment and continued consultations with Dr. Pasquatt, Family Medical Services and the Psychiatric Institute that progress will be made in dealing with Andrew's addictions.

Prior to Andrew being incarcerated he had put a plan into effect and was actually going to meetings, scheduling appointments to continue to see Drs Sherron and Pasquatt and had made arrangements to attend an after care program with Family Services. He had even expressed his concern about moving out of the environment he was living in. Andrew did this immediately after leaving Psychiatric Institute. That showed me that he was serious, I did not have to coach him to do this.

In spite of the fact that Andrew's addiction has been his downfall, he has never given up trying to stop using drugs. Andrew helped me tremendously when I was diagnosed with cancer a couple of years ago. While I went through my medical treatments, he was my primary care provider. I know that my circumstances would not have been as easy to bear if it had not been for his patience and concern for me. I express the same concern for him.

Andrew has been diagnosed with myositis (see attached documentation). In the long run it would cost the DOC more money to house him and pay for his medical attention. I strongly recommend that Andrew continues to receive medical attention from the Medical Faculty Associates an affiliate of the GWU where he was diagnosed and had begun treatment and follow up for this disease. Andrew has suffered tremendously since being incarcerated. I sincerely believe he understands that he has to work harder on his addictions as they could very well cause his illness to progress. I know my husband probably better than he knows himself.

I ask that you show some compassion toward my husband and reinstate Andrew's parole so that we can continue to work together on his well being. I guarantee that we live in a society that we all will have to at some point ask for compassion for ourselves or for our loved ones. I asked that you afford him the same measure that you would want afforded to you. Indeed it was compassion that woke us up this morning.

I remain humble,

*Joyce White*

Joyce Anne White

August 1, 2005

TO WHOM IT MAY CONCERN:

I am writing this letter on behalf of my son-in-law, Andrew White. It has been brought to my attention that he is incarcerated due to his drug addiction. I don't believe that incarceration is the answer to the problem that my son-in-law has struggled with for years.

My daughter has been raised in the fear and admonition of God and if she has stood by his side for over 20 years that says a lot about the type of person that Andrew is. I have gotten to know Andrew pretty well over the years and can't really say an unkind word about him. Drug addition is an illness and is something that will have to be worked on for the rest of his life. Even though his drug addiction has been a concern to me, it is not the primary concern I have at this particular time. My concern is for his health, as I have learned that it is failing him.

It is my understanding that he had put forth an effort on his own initiative in seeking for some help with drug addiction, mental and physical health and was on his way to fighting for his life when unfortunate circumstances landed him incarcerated.

I strongly recommend that Andrew be released to be given an opportunity to continue seeking help for his issues ( drug addition, health, spiritual). My daughter has ensured that he has a team of doctors that is familiar with his issues and has put a treatment plan into effect as well as the personal care that he will eventually need.

My daughter's health is failing her as well and I believe that he being away from the household to help with her care has put a strain on her. I know she worries about Andrew not receiving the proper care he needs while he is incarcerated. I'm sure they do the best they can for him but the best they can is not necessarily the best care that he should receive.

Please consider allowing my son-in-law to be placed back into society where he can get the proper care needed to fight the disease(s) that he has.

Most respectfully,

*Mildred V. Gross*

Mildred V. Gross & family

September 9, 2005

I, Richard Mullen-El state that on April 21, 2005, Mr. Andrew White reported to Blair House. Mr. White met with me and was told that he could not be a resident in this program until he had all his medication. Mr. White left this facility that morning and returned that afternoon. He stated to me, that he had to make an appointment with his doctor and that he could not obtain the medication at that time. Mr. White was never admitted in this program, on April 21, 2005. I asked Mr. White to return to this program once he received his medication. Mr. White called on April 22, 2005 stating that he would enter Blair facility on April 28, 2005. I called SCSO Asher to let her know about the status of the client. Then SCSO Asher said to me, "that she didn't know he was on that particular medication," and if I was to talk with Mr. White again. Then he is to report to her immediately. I relayed the message to Mr. White.

*R. Mullen El*
Richard Mullen-El

Case 1:05-cv-01811-JDB    Document 1-2    Filed 09/13/2005    Page 7 of 10

Grievance No.: 478

RECEIVED 8/19/05

Form 14-5A – For Official Use Only

## CCA INMATE/RESIDENT GRIEVANCE FORM

AUG 17 PM 4:47

Name (Print): WHITE, ANDREW N
Last Name / First / Middle Initial

Number: #17989   Housing Assignment: D4-B

INFORMAL RESOLUTION ATTEMPTED?  Yes  X    No ___

NAME OF STAFF CONTACTED: Medly

**STATE GRIEVANCE** (Include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary).

Dential sick-call request made by me in June 05. Several additional sickcall slip submitted August 05. Last sickcall slip submitted 8-17-05. Tooth infected, face swollen, and I'm in serious pain. Dential clinic told CO Medly I have to wait 35 to 40 days. I've already wait 60 days and can't wait much longer.

**Requested Action**

To be taken to a dentist as soon as possible.

Inmate/Resident's Signature: Andrew White    Date Submitted: 8-17-05

**GRIEVANCE OFFICER'S REPORT**

We apologize for the extensive waiting, but let us noted that you have been seen and evaluated by the dentist on 8/19/05

**GRIEVANCE OFFICER'S DECISION**

Grievance Officer's Signature: _____ Date: 8/23/05
Inmate/Resident's Signature (upon receipt): Andrew White    Date: ___

APPEAL: Yes ___   No ___    STATE REASON(S) FOR APPEAL: ___

**WARDEN/ADMINISTRATOR'S RESPONSE**

Warden/Administrator's Signature: ___   Date: ___
Inmate/Resident's Signature (upon receipt) ___   Date: ___

Revised 02-01-02

May 27 03 04:36p    GWUMC HEM-ONC           202-9__-4524        p.2

# MEDICAL FACULTY ASSOCIATES

## THE GEORGE WASHINGTON UNIVERSITY

AARP

Re:   Joyce A. White
      DOB: 1/13/58

Joyce White is a patient under my care at the GW Cancer Center. Ms. White is undergoing treatment for cancer. She is receiving chemotherapy every three weeks. Due to her cancer, as well as the side effects of treatment, including diarrhea, pain in her joints, mouth sores, fatigue, and susceptibility to infection, Ms. White is disabled and unable to work.

If you have any questions, please contact me at 202-741-2478. Thank you for your assistance to Ms. White.

Sincerely,

Robert S. Siegel, MD
Professor of Medicine
Director, Division of Hematology/Oncology
Medical Director, Cancer Center

DIVISION OF HEMATOLOGY / ONCOLOGY
2150 PENNSYLVANIA AVENUE, NW, SUITE 3-428 • WASHINGTON, DC 20037 • 202-741-2478 • FAX 202-741-2487

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
ADULT PROBATION

*177 986*

PRESENTENCE REPORT

JUDGE: The Honorable H. Carl Moultrie, I

DATE REFERRED: 11-15-74

DUE DATE: 12-30-74

PROBATION OFFICER: William C. Simpson

SENTENCING DATE: 1-22-75

COURT NAME: Andrew N. White

True Name: Andrew Nathanial White

Aliases: None

ADDRESS: 2242 - 15th Street, N.E.
Washington, D. C.
(Wife and In-Laws)

TELEPHONE: 832-9230

DOCKET NO.: 34691-74

AGE, DATE AND BIRTHPLACE:
24; 8-19-50; Washington, D. C.

OFFENSE, CODE AND PENALTY:
Armed Robbery (22-3202)
Imprisonment Up to Life
Robbery (22-2901) 2 to 15 Years
Assault With a Dangerous Weapon (Gun)
(22-502) 10 Years

CITIZENSHIP: United States    SEX: M

TIME IN D.C. AREA: Life

EDUCATION: 9th Grade Sharpe Healt
G.E.D. Army

PLEA: Not Guilty    JUDGMENT: Guilty

MARITAL STATUS AND DEPENDENTS:
Married; One (1)

BOND STATUS: Committed Without
Bond Pending Sentence

SOCIAL SECURITY NO.: 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

CO-DEFENDANTS:
Allen Bussey
Dwight L. Tucker
Walter R. Wood

DETAINERS OR PENDING CHARGES:
Armed Robbery (Knife)
Preliminary Hearing Scheduled
for 1-7-75

PERMIT NO.: D.C. #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

MPDC NO.: 213-541

DCDC NO.: 177 989

FBI NO.: 501-278 G

05 1811

FILED
SEP 13 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A.U.S.A.:

DEFENSE COUNSEL: Mr. Paul Evans

DISPOSITION AND DATE:
1-22-75   Ct. H+F (Armed Robbery)   10-30 years   to run conc
Ct. G, H+I (ADW)   3-9 years   any other sen
Ct. K   (Misd)   3-9 months