**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANDREW N. WHITE** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1811 (JDB)** |
| | ) | |
| **UNITED STATES PAROLE** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**UNITED STATES PAROLE COMMISSION'S OPPOSITION TO**
**PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS**

The United States Parole Commission, by and through its attorney, the United States

Attorney for the District of Columbia, respectfully opposes Petitioner Andrew White's petition

for a writ of habeas corpus.  In his petition, Petitioner claims that the United States Parole

Commission improperly: 1) issued and executed a parole violator warrant based on erroneous,

exaggerated and false information; 2) forfeited the time he spent on parole, known as street time,

in violation of his constitutional rights; and 3) delayed holding a parole revocation hearing.  For

the reasons set forth herein, this Court should summarily deny the petition.

**PROCEDURAL HISTORY**

On January 22, 1975, Petitioner Andrew N. White was sentenced in the Superior Court of

the District of Columbia to a thirty year maximum term of imprisonment for attempted robbery

and robbery.  *See* Exhibit 1 (Federal Bureau of Prisons sentence monitoring computation data).

The District of Columbia Board of Parole placed Petitioner on parole on May 17, 1985, with the

requirement that Petitioner remain under parole supervision until November 5, 2004.  *See* Exhibit

2 (certificate of parole).

On June 3, 1991, the District of Columbia Board of Parole revoked Petitioner's parole. *See* Exhibit 3 (notice of board order). Petitioner was reparoled on September 27, 1991, with the requirement that he remain under supervision until July 6, 2007. *See* Exhibit 4 (certificate of parole).

On November 23, 1992, the District of Columbia Board of Parole revoked Petitioner's parole for the second time. *See* Exhibit 5 (notice of board order). Petitioner was reparoled on February 8, 1993, with the requirement that he remain under supervision until July 8, 2007. *See* Exhibit 6 (certificate of parole).

Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745, on August 5, 1998, the United States Parole Commission assumed responsibility for parole release decisions formerly made by the District of Columbia Board of Parole. *See* D.C. Code § 24-131 (formerly codified at D.C. Code § 24-1231). Petitioner accordingly was transferred to the jurisdiction of the United States Parole Commission.[1]

On May 27, 2004, the United States Parole Commission revoked Petitioner's parole. *See* Exhibit 7 (notice of action). The Commission ordered that petitioner receive no credit for time spent on parole ("street time"), and that he be reparoled after service of 3 months. *See id.* Petitioner was reparoled on July 27, 2004, with the requirement that he remain under parole supervision until September 23, 2018. *See* Exhibit 8 (certificate of parole); *see also* Exhibit 1 (Federal Bureau of Prisons sentence monitoring computation data); Exhibit 9 (request for parole

---

[1] On August 5, 2000, the Parole Commission assumed responsibility for parole revocation decisions formerly made by the Board. See D.C. Code § 24-131(a)(1)-(2).

2

certificates).  The recalculation of Petitioner's full-term date was based on the decision in *United States Parole Commission v. Noble*, 693 A.2d 1084 (D.C. 1997), adopted *en banc*, 711 A.2d 85 (D.C. 1998), in which the District of Columbia Court of Appeals held that loss of "street time" credits when parole is revoked is an automatic statutory penalty under the District of Columbia parole laws.  Petitioner signed his certificate of parole, and thereby acknowledged that he had 5,171 days remaining on his sentence, and that he was aware that if he violated the conditions of parole he could be sent back to prison.  *See* Exhibit 8.

On May 17, 2005, the United States Parole Commission issued a warrant charging Petitioner with violating the conditions of parole by failing to submit to drug testing, using dangerous and habit forming drugs and violating the special drug aftercare condition of his parole.  *See* Exhibit 10 (warrant application).  Petitioner was arrested on the Commission's warrant on May 19, 2005.  *See* Exhibit 11 (warrant and return).

The Commission conducted a revocation hearing for Petitioner on September 29, 2005.  *See* Exhibit 12 (hearing summary).  On October 19, 2005, the Commission determined that Petitioner violated his conditions of parole as charged, and ordered his parole revoked.  The Commission further ordered that Petitioner receive no credit for time spent on parole ("street time"), and that he serve 16 months (until October 7, 2006) before reparole.  *See* Exhibit 13 (notice of action).  The Commission's decision was administratively appealable (up to November 18, 2005, *see* 28 C.F.R. §§2.105(g), 2.26(a)(2)).  Petitioner, however, did not appeal the Commission's decision.

Petitioner now appears before this Court on a petition for a writ of habeas corpus filed, *pro se*, on September 13, 2005.  In his petition, Petitioner asserts that the United States Parole

3

Commission: 1) violated his due process rights by "issuing and executing a parole violation warrant based on erroneous, exaggerated, and false information"; 2) violated his rights under the United States Constitution by not giving him credit against his sentence for the time he served while on parole ("street time"); and 3) violated his rights by holding his parole revocation hearing more than sixty days after the probable cause hearing.[2]  For the reasons set forth below, this Court should reject Petitioner's arguments and summarily deny his petition.

## ARGUMENT

**I.  There Is No Merit To Petitioner's Unsupported Claim That The Commission's Parole Violator Warrant Was Based On Erroneous, Exaggerated Or False Information**

This Court should summarily reject Petitioner's claim that the Commission violated his due process rights by issuing a parole violator warrant that allegedly was based on erroneous, exaggerated and false information.  *See* Petition at 2.  Petitioner's claim is vague and conclusory, and should be denied on that basis.  *See Payne v. United States*, 539 F.2d 443, 444-45 (5th Cir. 1976) (conclusory claim not supported by factual allegations would not be considered by court); *Dye v. United States Parole Commission*, 558 F.2d 1376, 1379 (10th Cir. 1977) ("bald, conclusory" allegations insufficient to state a claim for relief).  Petitioner does not identify any aspect of the parole violator warrant that was erroneous, exaggerated or false.  In fact, Petitioner's complaint about the accuracy of the warrant is flatly contradicted by the admissions that Petitioner made at the parole revocation hearing.  *See* Exhibit 13 (Petitioner admitted to

---

[2]  To the extent that Petitioner claims that he did not receive medication in a consistent manner and was not able to exercise after his arrest on the parole violator warrant (*see* Petition at 2), the United States notes that the District of Columbia Department of Corrections is the proper entity to respond to those claims.  Accordingly, on November 29, 2005, the United States forwarded a copy of Petitioner's motion and exhibits to that office for review.

failing to submit to drug testing and admitted to using dangerous and habit forming drugs);

*compare* Exhibit 10 (warrant charging, *inter alia*, that Petitioner failed to submit to drug testing

and was using dangerous and habit forming drugs). Since Petitioner offers no support for his

challenge to the warrant, his claim that the Commission violated his due process rights by issuing

the warrant fails.

## II. The United States Parole Commission's Decision Not to Give Petitioner Credit for Time Spent on Parole Is Valid and Constitutional

Next, Petitioner claims that the United States Parole Commission violated his

constitutional rights when, in connection with revoking Petitioner's parole, the Commission

decided not to give Petitioner credit for street time. Specifically, Petitioner claims that the

Commission's decision violates the *ex post facto* and due process clauses of the United States

Constitution.[3] Each of Petitioner's claims fails.

There is no merit to Petitioner's claims based on the *ex post facto* and due process

clauses. In *United States Parole Commission v. Noble*, 693 A.2d 1084, 1086-87 (D.C. 1997),

---

[3] Petitioner also claims that the denial of street time constitutes cruel and unusual punishment, in violation of the Eighth Amendment. To the extent that Defendant bases this claim on the conditions of confinement that he will experience while serving his time, the United States notes that the United States Parole Commission is not the proper respondent to such a claim. *See supra* n.2 (conditions of confinement are the province of the District of Columbia Department of Corrections).

If Petitioner is claiming that it constitutes cruel and unusual punishment to require him to serve the remainder of his thirty-year sentence for attempted robbery and robbery, the United States notes that such a claim is time barred under 28 U.S.C. § 2255 insofar as petitioner makes his claim more than one year after his conviction became final and does not qualify for any exception to that deadline. Furthermore, Petitioner's Eighth Amendment claim is meritless in any event because the thirty year sentence is proportional to Petitioner's crimes, and Petitioner implicitly acknowledged as much when he signed the July 27, 2005 certificate of parole and therein acknowledged that he could be required to serve the remainder of his sentence if he violated the conditions of parole. *See* Exhibit 8; *Cf. Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (articulating proportionality standard that applies to cruel and unusual punishment claims).

adopted *en banc*, 711 A.2d 85 (D.C. 1998), the District of Columbia Court of Appeals held that,

under D.C. Code § 24-206(a),[4] a parolee must forfeit all of the time spent he has spent on parole

if parole is revoked, *i.e.*, he must forfeit his "street time."  *See also* D.C. Code § 24-406(a)

(stating that if parole is revoked, the "time a prisoner was on parole shall not be taken into

account to diminish the time for which he was sentenced").  In reaching that decision, the court

in *Noble* held that a regulation that indicated prisoners should receive credit for street time was

invalid, because D.C. Code § 24-206 (a) was not repealed by D.C. Code § 24-431(a), the

statutory provision on which the erroneous regulation was based.  *See Noble*, 693 A.2d at 1098-

99; *Davis v. Moore*, 772 A.2d 204, 216 (D.C. 2001) (*en banc*).

Later, in *Davis*, 772 A.2d at 231, the District of Columbia Court of Appeals held that the

*Noble* decision regarding "street time" applied retroactively to prisoners who committed their

offenses before *Noble* was decided.  In reaching that decision, the court in *Davis* rejected

arguments that applying the "street time" rule stated in *Noble* retroactively violated the *ex post

facto* or due process clauses.  *Davis*, 772 A.2d at 215-16, 216-20.  Regarding the *ex post

facto* clause, the court in *Davis* explained that the *Noble* decision could apply retroactively

because that decision did not impose a greater punishment than was available when the offenses

in question were committed.  *Davis*, 772 A.2d at 216.  The court in *Noble* rejected an erroneous

regulation regarding street time and clarified that D.C. Code § 24-206(a) was, and had always

been (since enactment in 1932), the controlling legal authority on whether prisoners could

receive credit for street time after their parole was revoked.  *Davis*, 772 A.2d at 216 (explaining

this aspect of the *Noble* decision).  Consequently, the decision in *Noble* could apply retroactively

---

[4]  After *Noble* was decided, D.C. Code § 24-206 was re-codified at § 24-406.

without violating the *ex post facto* clause because the decision in *Noble* did not change the

provisions in D.C. Code § 24-206(a) regarding street time, which were in effect before the

petitioners committed their offenses. *Davis*, 772 A.2d at 216.

 The court in *Davis* also rejected the petitioners' due process challenge to the retroactive

application of *Noble* to individuals who committed crimes before that case was decided. As the

*Davis* court explained, a due process claim would not lie because the rule announced in *Noble*

was not "so unforeseeable that appellants had no fair warning that it might come out the way it

did." *Davis*, 772 A.2d at 217. To the contrary, the decision in *Noble*: 1) did not overrule any

previous decision; 2) "was grounded on the well established principle of statutory construction

that repeals by implication are strongly disfavored"; and 3) "[was] forecasted explicitly by the

1991 opinion of the Ninth Circuit [in *Tyler v. United States*, 929 F.2d 451 (9th Cir. 1991)], 'the

only appellate decision that addressed the issue' prior to [*Noble*]." *Davis*, 772 A.2d at 218. The

*Davis* court added that District of Columbia offenders received "actual warning" of the *Noble*

holding through the actions of the United States Parole Commission, which supervised District

of Columbia offenders who were placed in federal facilities and consistently denied street time

credits to those offenders after parole revocation. *Davis*, 772 A.2d at 218-219 ("D.C. offenders

were on notice that the law in this area was unsettled, and that the disagreement between the

Commission and the District might one day be settled in favor of the Commission's view, as in

*Noble* it was.").[5]

------

 [5] *See also Artis-Bey v. United States*, 2003 WL 22239612 at *1 (D.C. Cir. Sept. 24, 2003) (recognizing that under District of Columbia law, a parole violator is not entitled to credit for street time); *Jones v. Bureau of Prisons*, 2002 WL 31189792 at *1 (D.C. Cir. Oct. 2, 2002) (same); *McQueen v. United States Parole Comm'n*, 2005 WL 913151 at *2 (D.D.C. April 19, 2005) (same); *Simmons v. United States Parole Comm'n*, 2005 WL 758268 at *2 (D.D.C. April

In short, Petitioner's *ex post facto* and due process clause claims fail because they run afoul of established precedent rejecting similar claims. As *Noble* settled, D.C. Code § 24-406 governs the issue of street time, and states that a parole violator loses credit for time spent on parole when parole is revoked. As *Davis* explained, the Commission may apply D.C. Code § 24-406 to Petitioner's case because, *inter alia*, the statute took effect long before Petitioner committed his crime and has remained in effect throughout Petitioner's sentence. The statute therefore does not subject Petitioner to any unforeseeable or improper penalties for violating parole. Accordingly, the Commission properly relied on D.C. Code § 24-406 in denying Petitioner credit for street time after Petitioner's parole was revoked.

## III.  This Court Should Summarily Deny Petitioner's Claim Regarding The Timing Of His Parole Revocation Hearing

Finally, this Court should summarily deny Petitioner's claim regarding the timing of his parole revocation hearing. When Petitioner filed his petition on September 13, 2005, he correctly observed that he had not received a timely revocation hearing. However, the Commission remedied that issue two weeks later when it held Petitioner's parole revocation hearing on September 29, 2005. Since Petitioner does not and cannot show that he was prejudiced by the brief delay in scheduling his parole revocation hearing, his request for habeas relief fails.

It is well established that "[d]elay *per se* does not constitute a violation of due process entitling an accused parole violator to immediate release where the parolee has finally been afforded the revocation hearing and the facts of the violation fairly adjudicated." *McNeal v. United States*, 553 F.2d 66, 68 (10th Cir. 1977) (*per curiam*). Instead, the remedy for a delayed

---

1, 2005) (same); *Wade v. Figueroa*, 2005 WL 607974 at *2-3 (D.D.C. March 15, 2005) (same).

parole revocation hearing is to require the United States Parole Commission to conduct a hearing. *See Bryant v. Grinner*, 563 F.2d 871, 872 (7th Cir. 1977) (noting that the legislative history for 18 U.S.C. § 4214(c) indicates that if the Parole Commission fails to meet a deadline for decision-making established by the Act, the proper remedy would be to compel the decision and not to release the prisoner from custody).

An alleged parole violator such as Petitioner would only be entitled to habeas relief if he can meet his burden of showing that the Parole Commission's delay was unreasonable and resulted in actual prejudice to the defense he intended to present at the parole revocation hearing. *See Sutherland v. McCall*, 709 F.2d 730, 733 (D.C. Cir. 1983). Where there is no claim of such prejudice, habeas relief is not appropriate. *See Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 45 (5th Cir. 1991) (*per curiam*) (holding that petitioner was not prejudiced by delay because petitioner did not assert that his ability to present facts or contest the parole violation was affected by the delay); *United States v. Wickham*, 618 F.2d 1307, 1311 (9th Cir. 1979) (explaining that a petitioner claiming actual prejudice resulting from a delayed probation revocation hearing generally must show that the delay impaired his or her ability to contest alleged violation or present favorable evidence).

Applying that legal standard, Petitioner is not entitled to habeas relief. Petitioner does not claim, much less show, that his ability to present a defense at his parole revocation hearing was prejudiced in any way by the Parole Commission's delay in holding the hearing. *See Crum v. United States Parole Comm'n*, 814 F. Supp. 1, 3 (D.D.C. 1993) (petitioner was not prejudiced by 157-day delay between arrest and first parole revocation hearing date); *see also Grinner*, 563 F.2d at 872 (collecting cases holding that petitioner was not prejudiced despite delays between

9

ten months and two years from execution of parole violator warrant and parole revocation

hearing).  Indeed, since Petitioner admitted to two of the three alleged parole violations (using

dangerous and habit forming drugs and to failing to submit to drug testing, *see* Exhibit 13) at the

parole revocation hearing, he cannot plausibly argue that he was somehow disadvantaged in

presenting a defense at the hearing.   Ultimately, Petitioner received the parole revocation hearing

he desired, and suffered no prejudice as a result of the pre-hearing delay.  Accordingly, this Court

should summarily deny Petitioner's claim as moot.

**<u>CONCLUSION</u>**

For the foregoing reasons, Petitioner is not entitled to relief on his claims challenging the

actions of the United States Parole Commission, and thus this Court summarily should deny

Petitioner's petition for a writ of habeas corpus.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

ROBERT D. OKUN (D.C. Bar No. 457-078)
Chief, Special Proceedings Section


_____/s/_____
GEOFFREY CARTER (D.C. Bar No. 460-971)
Assistant United States Attorney
Special Proceedings Section
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 305-1845

10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of November, 2005, a copy of the foregoing pleading was served via the United States District Court's Electronic Case Filing program to counsel for Petitioner, Jenifer Wicks, Esq., The Webster Building, 503 D St., NW, Suite 250A, Washington, DC 20001.


_____/s/ Geoffrey Carter_____

ASSISTANT UNITED STATES ATTORNEY